FILED
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAVIER ZAPATA-CHACON,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

------------------------------

NATIONAL IMMIGRATION
LITIGATION ALLIANCE,

    Amicus Curiae.

No. 20-9645

_____

**Petition for Review of an Order from the**
**Board of Immigration Appeals**
_____

Hans Meyer, Meyer Law Office P.C. (Andrew Bramante with him on the briefs), Denver, Colorado, for Petitioner.

Timothy G. Hayes, Office of Immigration Litigation (Brian Boynton, Acting Assistant Attorney General, Civil Division; and Cindy S. Ferrier, Office of Immigration Litigation, with him on the brief), Washington, D.C., for Respondent.

Kristin Macleod-Ball and Trina Realmuto, National Immigration Litigation Alliance, Brookline, Massachusetts, filed an amicus brief on behalf of the National Immigration Litigation Alliance.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

In 1999, Javier Zapata-Chacon, then a conditional permanent resident, admitted his removability based on a Colorado conviction for possession of marihuana. An Immigration Judge ("IJ") ordered Mr. Zapata-Chacon removed and a final administrative order issued and was executed that same year. Since his removal, Mr. Zapata-Chacon has illegally reentered the United States on three occasions. In 2020, Mr. Zapata-Chacon filed a motion to reconsider the 1999 removal order, arguing his possession of marihuana conviction was not a categorical match to a federal "controlled substance offense" because Colorado's definition of marihuana used broader language than the federal definition. An IJ denied the motion. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's denial, and Mr. Zapata-Chacon filed this petition for review.

With the petition pending before this court, the Government, through a letter pursuant to Federal Rule of Appellate Procedure 28(j), contends for the first time that the IJ and the BIA lack authority to reopen or review Mr. Zapata-Chacon's proceeding based on him having illegally reentered the United States. We conclude 8 U.S.C. § 1231(a)(5) clearly strips the BIA of authority to review a prior order of removal or to grant any relief provided by the Immigration and Nationality Chapter of Title 8 once a removed alien illegally reenters the United States. Accordingly, we deny Mr. Zapata-Chacon's petition for review.

2

## I.    BACKGROUND

Mr. Zapata-Chacon was born in Mexico. It appears from the record that he entered the United States by 1994. In May 1996, Mr. Zapata-Chacon married Genoveva Perez, a United States citizen. Based on his marriage, Mr. Zapata-Chacon obtained conditional lawful permanent resident status in the United States.

In 1998, a Denver police officer observed Mr. Zapata-Chacon in possession of a ziplock bag with "suspected cocaine powder" from which Mr. Zapata-Chacon "snort[ed]" some of the powder before stuffing the ziplock bag into "the fly portion of his pants." A.R. at 175. Officers arrested Mr. Zapata-Chacon. Mr. Zapata-Chacon pleaded guilty to one class 5 felony of possession of more than eight ounces of marihuana, in violation of Section 18-18-406(4)(b) of the Colorado Revised Statutes. Mr. Zapata-Chacon received a two-year sentence for his offense, which the state court suspended for the purpose of delivering him to Immigration and Nationalization Services ("INS") for deportation.

On the same day as his criminal sentencing, INS issued Mr. Zapata-Chacon a Notice to Appear for a deportation hearing, identifying his Colorado marihuana conviction as an offense "relating to a controlled substance." *Id.* at 260. At the hearing, Mr. Zapata-Chacon admitted he sustained a Colorado conviction for possession of marihuana, and an IJ ordered him removed. Authorities removed Mr. Zapata-Chacon to Mexico in June 1999.

In the years following his removal, Mr. Zapata-Chacon became well-acquainted with the United States-Mexico border and immigration officials.

3

Sometime between his 1999 removal and August 2002,[1] Mr. Zapata-Chacon illegally reentered the United States for the first time, resulting in his October 2002 removal to Mexico. Mr. Zapata-Chacon again illegally reentered the United States by March 2005, when immigration authorities detained him. This time, Mr. Zapata-Chacon was charged with and pleaded guilty to one criminal count of illegal reentry, in violation of 8 U.S.C. § 1326(a)(1), (2). INS reinstated Mr. Zapata-Chacon's 1999 removal order and removed him in July 2005. In late 2005 or early 2006, Mr. Zapata-Chacon illegally reentered the United States for a third time, this time seemingly avoiding detection for approximately fifteen years until 2020, when he filed the motion underlying the present petition for review.

In mid-2020, Mr. Zapata-Chacon filed a Motion to Reconsider and Terminate in the immigration court. Through the motion, Mr. Zapata-Chacon argued the Colorado statute controlling his marihuana conviction used broader language than the federal statute criminalizing marihuana possession because Colorado's definition of marihuana did not except mature stalks of the *cannabis sativa L* plant like the federal definition of marihuana did. Accordingly, in Mr. Zapata-Chacon's view, a conviction for possession of marihuana in Colorado does not relate to a federal "controlled substance offense." To overcome the time bar on motions to reconsider, Mr. Zapata-

---

[1] In an affidavit, Mr. Zapata-Chacon indicates he illegally reentered the United States in 2000.

Chacon asked for equitable tolling or, alternatively, for the IJ to sua sponte reconsider his case.

The IJ denied Mr. Zapata-Chacon's motion to reconsider. First, the IJ concluded the motion was untimely. The IJ then concluded the immigration court had not committed error in 1999, when it found Mr. Zapata-Chacon deportable based on his Colorado marihuana conviction. The IJ also concluded Mr. Zapata-Chacon was not entitled to equitable tolling of the statutory period for filing a motion to reconsider because he "failed to demonstrate due diligence throughout the *entire* period he seeks to have equitably tolled."[2] *Id.* at 67. Finally, the IJ declined to exercise sua sponte authority to reconsider Mr. Zapata-Chacon's case.

Mr. Zapata-Chacon filed an appeal with the BIA. The BIA "adopt[ed] and affirm[ed] the decision of the Immigration Judge" and dismissed the appeal. *Id.* at 2. At no point did the IJ or the BIA rely upon 8 U.S.C. § 1231(a)(5) and one or more of Mr. Zapata-Chacon's illegal reentries into the United States as an absolute bar to relief.

Mr. Zapata-Chacon seeks review of the BIA's decision in this court. In a Federal Rule of Appellate Procedure 28(j) letter, the Government argues the BIA

---

[2] In support of this conclusion, the IJ found that Mr. Zapata-Chacon's pursual of his rights featured (1) illegally reentering the United States; (2) consulting with attorneys in 2001, 2004, 2005, 2006, 2014, 2015, 2016, 2017, 2018, and 2019; and (3) allegedly also consulting with attorneys annually from 2007 to 2013. Implicit in these findings is that Mr. Zapata-Chacon did not consult with counsel and make efforts to explore relief options in 1999, 2000, 2002, or 2003.

lacks authority to reopen or review Mr. Zapata-Chacon's case because he illegally reentered the United States. In response to this letter, Mr. Zapata-Chacon contends (1) a Rule 28(j) letter is not a proper pleading for the Government to raise a new argument if the argument was previously available; (2) the BIA did not rely upon this reasoning so the panel should not adopt it as a ground for denying review; (3) the provision barring reopening and review does not apply because Mr. Zapata-Chacon filed a motion to reconsider, not a motion to reopen; and (4) the provision barring reopening and review does not apply because the Government has not reinstated his order of removal.

## II.    DISCUSSION

### A.    *Standard of Review*

"We review BIA decisions on motions to reopen and motions to reconsider for an abuse of discretion." *Berdiev v. Garland*, 13 F.4th 1125, 1130 (10th Cir. 2021). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (quotation marks omitted). Another way the BIA may abuse its discretion is if it "mak[es] a factual finding that is not supported by substantial record evidence." *Berdiev*, 13 F.4th at 1131 (quotation marks omitted). The BIA also "abuses its discretion when it makes an error of law." *Banuelos v. Barr*, 953 F.3d 1176, 1179 (10th Cir. 2020).

When it comes to denying a petition on alternative grounds, we generally are "not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." *Mickeviciute v. INS*, 327 F.3d 1159, 1162–63 (10th Cir. 2003) (internal quotation marks omitted). But this limitation on the grounds upon which we may rely to deny a petition for review is not applicable where, on remand, governing law would "'*require*[]' [the agency] to reach a 'necessary result.'" *Gutierrez-Zavala v. Garland*, 32 F.4th 806, 810 (9th Cir. 2022) (quoting *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 544–45 (2008)). Put another way, we can avoid a remand if it would be futile. *See Ricketts v. Att'y Gen.*, 955 F.3d 348, 351–52 (3d Cir. 2020) (collecting cases and applying remand futility doctrine when denying petition for review); *see also Escamilla v. Holder*, 459 F. App'x 776, 787–88 (10th Cir. 2012) (unpublished) (commenting remand "would be a mere formality" because "'[r]emand to the BIA is futile whenever the reviewing panel is confident that the agency would reach the same result upon a reconsideration cleansed of errors.'" (ellipsis omitted) (quoting *Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 107 (2d Cir. 2006))). Specifically, in cases where the BIA did not rely upon § 1231(a)(5) but the alien illegally reentered, affirmance based on § 1231(a)(5) is appropriate because

> [t]he necessary and certain result of § 1231(a)(5)'s bar . . . is the denial of [the alien's] motion . . . for the BIA's lack of jurisdiction . . . [i]t follows that where we review the denial of a motion . . . that the BIA did not have jurisdiction to consider, [an appellate court] *need not remand for the agency to reach that same conclusion* because to do so "would be an idle and useless formality."

7

*Gutierrez-Zavala*, 32 F.4th at 810 (emphasis added) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

### B.     8 U.S.C. § 1231(a)(5) Strips the BIA of Authority

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act, constraining an alien's ability to challenge an earlier order of removal if the alien illegally reenters the United States after an order of removal becomes final. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34–35 (2006). The pertinent provision of the Act, as codified, states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien *is not eligible and may not apply for any relief under this chapter*, and the alien *shall be removed under the prior order at any time after the reentry*.

8 U.S.C. § 1231(a)(5) (emphasis added). The Supreme Court has recognized this provision takes a "harder line" on review of removal orders following an illegal reentry because it "applies to all illegal reentrants, explicitly insulates the removal orders *from review*, and generally forecloses discretionary relief from the terms of the reinstated order." *Fernandez-Vargas*, 548 U.S. at 34–35 (emphasis added). One of the purposes of § 1231(a)(5) is "to expedite re-removal of a person who returns without permission after being removed." *Tapia-Lemos v. Holder*, 696 F.3d 687, 690 (7th Cir. 2012).

Recently, we applied 8 U.S.C. § 1231(a)(5) to a petition for review filed by an alien who moved to "reopen" his case, joining several circuits by holding that once

8

the alien "illegally reentered the country, the BIA lacked authority to reopen [his] removal order." *Tarango-Delgado v. Garland*, 19 F.4th 1233, 1238 (10th Cir. 2021).

Although the analysis is slightly different, the same rule applies to Mr. Zapata-Chacon's motion to reconsider. There is no dispute Mr. Zapata-Chacon illegally reentered the United States on three occasions. Based on its plain language, § 1231(a)(5) prohibits three things once an alien illegally reenters and authorities reinstate his removal order: (1) the reopening of a prior order of removal, (2) the review of a prior order of removal, and (3) an alien's eligibility to apply for any relief. Even if the first prohibition does not apply to Mr. Zapata-Chacon's motion to reconsider, the latter two do.[3]

As to the second prohibition, Mr. Zapata-Chacon's argument to this court, as it was to the IJ and the BIA, is that the 1999 immigration court committed a legal error

---

[3] There is some debate on whether Mr. Zapata-Chacon's motion is best categorized as a motion to reopen or a motion to reconsider. A motion to reopen must be filed within ninety days of a final administrative order of removal and "shall state *the new facts* that will be proven at a hearing to be held if the motion is granted." 8 U.S.C. § 1229a(c)(7)(B) (emphasis added). Meanwhile, a motion to reconsider must be filed within thirty days of a final administrative order and "shall specify *the errors of law* or fact *in the previous order* and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C) (emphasis added). Where Mr. Zapata-Chacon challenged the legal basis for his 1999 removal order, his motion appears best categorized as one for reconsideration. However, where a final administrative order of removal has issued and been executed, a motion to reconsider may necessarily entail a request by the alien to reopen the proceeding. Although 8 U.S.C. § 1231(a)(5) prohibits the BIA from reopening a proceeding following an alien's removal, we do not solely rest our decision today on this facet of the statute because other aspects of § 1231(a)(5) clearly and independently preclude the BIA from entertaining the merits of a motion to reconsider once an alien illegally reenters the United States.

when applying the categorical approach and should not have ordered him removed. This argument necessitates "review" of the 1999 order of removal. *See Review*, Oxford English Dictionary (2d ed. 1989) (defining "review" as "[t]he act of looking over something (again), with a view to correction or improvement"); *see also Infanzon v. Ashcroft*, 386 F.3d 1359, 1363 n.4 (10th Cir. 2004) ("[P]urpose of motion to reconsider is not to raise new facts but to demonstrate BIA erred as matter of law or fact." (citing *Zhang v. INS*, 348 F.3d 289, 293 (1st Cir. 2003))); *Bhattarai v. Holder*, 408 F. App'x 212, 218 (10th Cir. 2011) (unpublished) ("A motion to reconsider 'is a request that the BIA *reexamine its decision* in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case that was overlooked.'" (emphasis added) (quoting *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004))). But § 1231(a)(5) clearly precludes "review" of a "prior order of removal" if the alien illegally reenters the United States following execution of a final administrative order of removal. Thus, even if the BIA could grant Mr. Zapata-Chacon relief without reopening his case, it could not do so without first *reviewing* the legal accuracy of the 1999 order. And § 1231(a)(5) precludes "review."[4]

---

[4] In a letter filed pursuant to Federal Rule of Appellate Procedure 28(j), the National Immigration Litigation Alliance contends "review[]" in § 1231(a)(5) pertains only to judicial review, not review by the BIA. For this proposition, the National Immigration Litigation Alliance cites *Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 (10th Cir. 2007), and *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 354 n.4 (5th Cir. 2018). While it is true that both of these cases discuss "review" within the context of questions regarding the availability of judicial review, neither authority suggests "review[]" in § 1231(a)(5) is limited to judicial review and does not extend to agency review. *See Rodriguez-Saragosa*, 904 F.3d at 354 n.4; *Lorenzo*, 508 F.3d at 1281. And we detect nothing in the language of § 1231(a)(5) so limiting the

The concept of obtaining relief, of course, brings us to the third prohibition imposed by § 1231(a)(5). Once an alien illegally reenters, he "may not apply for *any relief under this chapter*." 8 U.S.C. § 1231(a)(5) (emphasis added). The provision providing for a motion to reconsider is found at 8 U.S.C. § 1229a(c)(6), which, like § 1231(a)(5), is within the Immigration and Nationality Chapter of Title 8. And reconsideration of a prior decision is widely understood as seeking relief from the prior decision. *See Pineda v. Garland*, No. 20-9623, 2021 WL 3011910, at *2–3 (10th Cir. July 16, 2021) (unpublished) (treating motion to reconsider like motion to reopen for purposes of § 1231(a)(5) and noting BIA is barred from granting relief from reinstated removal order); *cf. Lebahn v. Owens*, 813 F.3d 1300, 1305 (10th Cir. 2016) (discussing relief from judgment and reconsideration interchangeably); *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 945 (9th Cir. 2007) (same). Accordingly, the

---

definition of "reviewed" or permitting an interpretation where "reopened" in the phrase "reopened or reviewed" applies to the BIA but "reviewed" does not. Further, as noted earlier, where a final administrative order was executed in Mr. Zapata-Chacon's case, there is no open immigration proceeding, so the issue of reopening versus reviewing is one without practical consequence in this case. Additionally, even if "review[]" were limited to judicial review, as we discuss next in the text, § 1231(a)(5) precludes an alien who has illegally reentered from seeking or obtaining "relief" under the Immigration and Nationality Chapter of Title 8—a matter the Rule 28(j) letter fails to address despite the issue being raised during oral argument, *see* Oral Argument at 1:40–1:55, 2:15–2:35, 4:55–5:20. To the extent the National Immigration Litigation Alliance points out that § 1231(a)(5) does not constrain our jurisdiction to review legal and constitutional questions, however, we concur with this point, as evident by our disposition of denying Mr. Zapata-Chacon's petition for review on an alternative legal ground rather than dismissing it for lack of jurisdiction. *See Lorenzo*, 508 F.3d at 1281 (recognizing that 8 U.S.C. § 1252(a)(2)(D) grants circuit courts jurisdiction to review legal and constitutional questions arising from immigration proceedings).

11

statutory scheme adopted by Congress precluded Mr. Zapata-Chacon from filing the motion to reconsider underlying his petition for review. And where § 1231(a)(5) is absolute without providing the BIA any discretion regarding its prohibition on review and relief, any remand to the BIA would be futile. The BIA would be compelled to apply § 1231(a)(5) and deny review and relief.

In an effort to overcome this conclusion, Mr. Zapata-Chacon offers two arguments not already addressed in our above analysis. First, Mr. Zapata-Chacon raises a procedural argument, contending the Government did not timely raise its § 1231(a)(5) argument and neither the IJ nor the BIA relied on the argument. Mr. Zapata-Chacon is correct that the Government first raised the issue in a Federal Rule of Appellate Procedure 28(j) letter submitted shortly before oral argument. Mr. Zapata-Chacon is also generally correct that a Rule 28(j) letter is not a proper pleading for a party to raise an argument for the first time. *See Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013) ("The proper function of Rule 28(j) letters, after all, is to advise the court of 'new authorities' a party has learned of after oral argument, not to interject a long available but previously unmentioned issue for decision.").[5] But, a party may invoke a jurisdictional argument at any time in the

---

[5] The Government's Rule 28(j) letter relies heavily on *Tarango-Delgado v. Garland*, 19 F.4th 1233 (10th Cir. 2021). Technically speaking, where the Government filed its brief in June 2021 and *Tarango-Delgado* issued in December 2021, *Tarango-Delgado* is a "new" authority. However, an argument under the plain text of 8 U.S.C. § 1231(a)(5) was available to the Government from commencement of proceedings on Mr. Zapata-Chacon's motion to reconsider.

litigation. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Objections to subject-matter jurisdiction . . . may be raised at any time."). And Mr. Zapata-Chacon concedes the Government's belated argument premised on § 1231(a)(5) is an attack on "the agency's *jurisdiction* to consider Mr. Zapata's motion to reconsider." Response to Supplemental Authority, *Zapata-Chacon v. Garland*, No. 20-9645 (10th Cir. Aug. 18, 2022) (emphasis added); *see Cuenca v. Barr*, 956 F.3d 1079, 1084 (9th Cir. 2020) (describing the "plain" language of § 1231(a)(5) "as instituting a permanent jurisdictional bar"); *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 354 n.4 (5th Cir. 2018) (describing § 1231(a)(5) as "a jurisdiction-stripping provision applicable to federal courts"); *see also Alfaro-Garcia v. U.S. Att'y Gen.*, 981 F.3d 978, 981–83 (11th Cir. 2020) (denying review from BIA's affirmance of IJ order denying motion to reopen based on § 1231(a)(5) and lack of jurisdiction following illegal reentry). Thus, while it would have been prudent and more efficient for the Government to identify the § 1231(a)(5) issue before the IJ and the BIA, the issue remains alive in this petition for review.[6] Furthermore, where § 1231(a)(5) strips the BIA of authority to review the 1999 order and to grant Mr. Zapata-Chacon any relief, remand would be futile such that the BIA's failure to

---

[6] Even if § 1231(a)(5) is not jurisdictional, its text is plain and the interpretation of such is a matter of law. Under our precedent, a party's waiver of an issue "binds only the party, not the court," as "it is well-settled that courts have discretion to raise and decide issues sua sponte." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1270 (10th Cir. 2022) (quotation marks omitted). This case presents a clear situation where it is appropriate to overlook any waiver since remand would be futile and an inefficient use of judicial and agency resources.

rely on § 1231(a)(5) does not deprive us of the ability to deny Mr. Zapata-Chacon's petition on this alternative ground. *See Gutierrez-Zavala*, 32 F.4th at 810; *Ricketts*, 955 F.3d at 351–52.

Second, Mr. Zapata-Chacon advances a statutory argument, contending § 1231(a)(5) is not applicable to him because his 1999 order of removal was not reinstated following his most recent illegal reentry. The record does not reveal the factual accuracy underlying this argument. But the 1999 order of removal was reinstated following Mr. Zapata-Chacon's 2005 illegal reentry. This reinstatement was sufficient to preclude the BIA from any future review of Mr. Zapata-Chacon's case even if he had later pursued relief while in Mexico after his removal following illegal reentry. *Cf. Fernandez-Vargas*, 548 U.S. at 33–36 (recognizing § 1231(a)(5) meant to prohibit BIA review after any reentry). The fact that Mr. Zapata-Chacon illegally reentered the United States again is immaterial for purposes of § 1231(a)(5) because the first illegal reentry and reinstatement of the removal order triggered § 1231(a)(5). An alternative reading of the statute, focused only on the most recent illegal reentry and reinstatement of removal therefrom, would incentivize an alien who has illegally reentered the United States and had his removal order reinstated to again illegally reenter in hopes of avoiding detection until he files a motion seeking relief under the Immigration and Nationality Chapter of Title 8.

Once Mr. Zapata-Chacon illegally reentered the United States the first time, no less the second time, the IJ and the BIA were stripped of authority to review or to grant him any relief from the 1999 removal order. And while the IJ and the BIA did

14

not rely upon this reasoning when denying Mr. Zapata-Chacon's motion to reconsider, 8 U.S.C. § 1231(a)(5) makes remand to the BIA futile, permitting us to deny review on this alternative ground.

### III.    CONCLUSION

We DENY Mr. Zapata-Chacon's petition for review.